WATTS *v.* STATE.

4740                                        261 S. W. 2d 402

Opinion delivered October 5, 1953.

Rehearing denied November 9, 1953.

*J. Fred Parish* and *C. M. Erwin,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

Ed. F. McFaddin, Justice. Appellant was convicted of the crime of rape and sentenced to life imprisonment. His motion for new trial contains 18 numbered assignments, but we find it necessary to discuss only Assignment No. 6,[1] which requires a reversal.

That the little 14-year-old girl was raped in her home by a hooded man who then fled through the woods, admits of no doubt. The serious issue was the evidence which tended to identify the appellant as such assailant. The person who committed the rape wore a hood over his face. In the woods the hood was found with hairs in it, supposedly from the head of the assailant. After appellant was arrested, some hair was taken from his head and sent by the State Police to the Federal Bureau of Investigation in Washington, along with the hairs in the hood. All this was in an effort to ascertain whether the two sets of hair were from the head of the same person.

The report was received by the State Police from the Federal Bureau of Investigation, but was never made available to the accused or his counsel. Several efforts were made by the court-appointed counsel for the accused to get this F.B.I. report, as counsel claimed a desire to take the deposition of the F.B.I. laboratory technician in Washington. All such efforts were unsuccessful because the Court ruled that it would not require

---

[1] This assignment reads in part: "The court erred in instructing the jury that they were not to consider any testimony concerning the Federal Bureau of Investigation report mentioned by Sergeant Henley of a comparative examination of hair; and the court erred . . . in the instruction given by the court to the jury to disregard any testimony about an investigative or comparative report . . ."

the filing of the report, since it would be inadmissible if offered in evidence.[2]

On the trial of the case, Sergeant Henley, of the Arkansas State Police, was called as witness for the State, and the following occurred:

"(Cross-examination).

". . . Q. Now, you took the hair off of his head when he was out at the police station, didn't you? A. No, sir. Q. Was it while he was in jail? A. Yes, sir.

. . .

"Q. And with that you sent some hair out of that hood, did you not? A. Yes, sir. Q. Did you send that to the F.B.I.? A. Yes, sir."

(Redirect examination).

"Q. How many pieces of hair did you send out of the hood? A. Two. Q. What was the substance of that report?"

The defendant's counsel objected to the attempt to have the witness answer the last quoted question claiming—*inter alia*—that the report was available and the attempted answer would be hearsay. When the Prosecuting Attorney asked the Trial Court to instruct the jury to disregard all evidence about the F.B.I. report, this occurred:

"By the Court: I am going to instruct the jury they are not to consider any testimony concerning the report mentioned by Sergeant Henley of a comparative examination of hair in their deliberations.

"By Mr. Erwin: Except to the ruling.

"By the Court: I am ruling out the whole thing, about the hairs or the report.

---

[2] In 52 A. L. R. 207 there is an Annotation on "Right of accused to inspection or disclosure of evidence in possession of prosecution." In addition to the reported case preceding the Annotation (*i. e., People ex rel. Lemon* v. *Supreme Court*, 245 N. Y. 24, 156 N. E. 84, 52 A. L. R. 200) attention is also called to the following cases: *State* v. *Tabet* (W. Va.), 67 S. E. 2d 326; *State* v. *Di Noi* (R. I.), 195 Atl. 497; *People* v. *Gatti*, 167 Misc. 545, 4 N. Y. Supp. 2d 130; and *Goldman* v. *U. S.*, 316 U. S. 142, 62 S. Ct. 993, 86 L. Ed. 1322.

"By Mr. Erwin: We object to the ruling of the court, ruling out of any consideration or argument the fact of the investigation, and the evidence with regard to the police taking his hairs out of his head. Note our exceptions."

Thereupon, over the defendant's objections and exceptions, the Court instructed the jury:

"Gentlemen, you are instructed to disregard any testimony with reference to hairs from the defendant's head, or hairs from the so-called mask, and to disregard any testimony about an investigation or comparative report."

Without this "hair evidence," the other evidence of identity consisted largely of lay opinion testimony as to footprints. We are not holding that the defendant was entitled to the F.B.I. report; but we are holding that the Trial Court committed prejudicial error in ruling out all the evidence about there being such a report concerning the comparison of the defendant's hair with the hair found in the hood worn by the assailant. Such ruling by the Trial Court prevented the defendant's counsel from arguing to the Jury anything about the failure of the State to offer the most definite evidence of identity that was available in this case.

The attorney for the defendant was entitled to the right to argue to the Jury on the failure of the State to produce the best evidence that the State possessed. In *Hopson* v. *State,* 121 Ark. 87, 180 S. W. 485, we recognized that the Prosecuting Attorney could comment on the failure of the defendant to call witnesses—other than himself—to testify as to facts known by such witnesses and claimed to be favorable to the defendant. See also *Cascio* v. *State,* 213 Ark. 418, 210 S. W. 2d 897. The same rule applies as to the right of the defendant to comment to the jury on the failure of the State to call witnesses who would presumably have supported the State's theory. In 23 C. J. S. 568, in discussing comments on failure to produce witnesses or evidence, the cases are summarized:

"Counsel for accused may comment on the absence of a state witness, competent and cognizant of material facts, or on the failure of the state to use available and competent evidence."

The right to make such an argument to the jury is impliedly recognized in those cases which discuss the presumption arising from the failure to produce witnesses or testimony. In *Graves* v. *U. S.*, 150 U. S. 118, 14 S. Ct. 40, 37 L. Ed. 1021, the rule is stated in this language:

"The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be favorable. 1 Starkie Ev., 54; *People* v. *Hovey*, 92 N. Y. 554, 559; *Mercer* v. *State*, 17 Tex. App. 452, 467; *Gordon* v. *People*, 33 N. Y. 501, 508."

In Wharton on Criminal Evidence, 11th Ed., § 112, this language appears:

"Failure to call as witnesses those who could testify to material facts may give rise to adverse presumptions or inferences, and an attempt to prevent a witness from attending is admissible as a fact from which an unfavorable inference may be legitimately drawn."[3]

When the Court told the jury to "disregard any testimony about an investigative or comparative report," the Court thereby prevented the defendant's counsel from commenting to the jury on the failure of the State to present the evidence the State might have offered regarding identity. The defendant was entitled to have his court-appointed counsel allowed to argue to the jury on the failure of the State to offer such evidence and the Court's ruling precluded such argument.

---

[3] See also Wharton on Criminal Evidence, 11th Ed., § 1124; Underhill on Criminal Evidence, 4th Ed., § 45; and *Stocker* v. *Boston & Main R. R.*, 84 N. H. 377, 151 Atl. 457, 70 A. L. R. 1320. Of particular interest is the case of *Gutierrez* v. *State*, (96 Tex. Cr. R. 327), 257 S. W. 889.

The judgment is reversed and the cause is remanded for a new trial.

The Chief Justice and Mr. Justice MILLWEE dissent.